**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

DXC TECHNOLOGY COMPANY, a
Nevada corporation,

              Plaintiff,

     V

.

JOHN DOES 1-2,

              Defendants.

Civil Action No:  1:20-cv-00814

## DXC'S REQUEST FOR ENTRY OF DEFAULT

Pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff DXC Technology Company ("DXC") requests that the Clerk of the Court enter default against Defendants John Does 1-2. As detailed below, Plaintiff has served the Complaint and all orders and pleadings on Defendants through Court-ordered methods pursuant to Fed. R. Civ. P. 4(f)(3) that were reasonably calculated to provide Defendants with notice of the proceedings. Dkt. No. 13 at pp. 7-8 (authorizing alternative methods of service, including particularly email and internet publication).  Defendants received notice and are very likely aware of these proceedings, and despite receiving notice have not appeared in this action.  The time for Defendants to appear and respond to Plaintiff's Complaint has now expired.

Upon the Court's entry of default pursuant to this request, Plaintiff intends, thereafter, to file a motion for default judgment and permanent injunction pursuant to Fed. R. Civ. P. 55(b)(2).

## I.    STATEMENT OF FACTS

This action arises out of violations of federal and state law caused by John Doe Defendants' coordinated cyberattack against DXC.  Defendants are the persons responsible for

developing a command and control infrastructure comprised of server computers hosting certain Internet domains (*i.e.* websites) through which they directed malicious software to DXC's servers and networks.  On July 22, 2020, the Court entered a TRO that disabled Defendants' technical infrastructure used to carry out attacks and to steal information and intellectual property.  Dkt. No. 13.  On August 3, 2020, the Court entered a Supplemental TRO to take down an additional domain.  Dkt. No 23. On August 7, 2020, the Court entered a Preliminary Injunction to ensure that Defendants' infrastructure cannot cause further harm.  Dkt. No. 32.

When the Court issued the TRO and Preliminary Injunction, the Court found good cause to permit service of Plaintiff's Complaint and related materials by alternative means pursuant to Rule 4(f)(3).  Dkt. No. 13 at pp. 7-8.  The Court has directed that, under the circumstances, appropriate means of service sufficient to satisfy Due Process include emails to email accounts associated with Defendants and publication on a publicly available Internet website. *Id.*

The Court further granted Plaintiff a 120 period in which to pursue discovery necessary to further identify and serve the Doe Defendants.  Dkt. No. 31.  On December 7, 2020, Doe discovery closed.  On December 15, 2020, this Court entered an order directing Plaintiff to obtain an entry of default against Defendants because "[i]t appears from the record that Defendants are in default."  Dkt. No. 33.

Plaintiff hereby moves for default against Defendants and provides a summary of its extensive and aggressive discovery efforts in the last 120 days – including service of no less than thirteen subpoenas – in an attempt to identify Doe Defendants.  Plaintiffs' iterative discovery efforts confirmed that Defendants used sophisticated technical means to conceal their identities when setting up and using the relevant Internet domains.  Plaintiff has continued to receive information in response to its discovery, including within the last week, which has helped

develop leads on a connection to Russia.  However, despite these extensive efforts, Defendants'
true identities remain unknown.  Declaration of Gabriel M. Ramsey ("Ramsey Decl.") ¶¶ 25-33.

**Plaintiff's Doe Discovery Efforts**

Over the past 120 days, Plaintiff issued a total of thirteen subpoenas to domain registrars
and hosting companies ("collectively ISPs"), payment processors, and communications
companies in an effort to obtain additional information regarding Defendants' identities.
Ramsey Decl. ¶ 25.

Plaintiff's discovery efforts yielded various names, addresses and payment information.
*Id.* ¶¶ 26-27.  Further investigation revealed that the names, addresses, and credit card
information used by Defendants were fake or stolen.  *Id.*  Defendants also made numerous
payments using anonymous Bitcoin payments that are not associated with any particular identity.
*Id.* ¶ 26.

Plaintiff identified several hosting companies involved with Defendants' infrastructure
and from discovery to those sources learned and examined IP addresses used to create, host and
log into that relevant infrastructure.  *Id.*. ¶ 27.  However, because of Defendants' use of
sophisticated techniques and services designed to conceal their actual IP address and location,
and to proxy their communications through third-party computers, it has not been possible to
identify Defendants with any greater particularity through these means either.  *Id.* ¶ 27.
Specifically, Defendants used free email services in jurisdictions which have no reciprocal
discovery means with the United States and anonymous VPN services or networks and/or the
"The Onion Router" (aka "Tor") networks, through which they have been able to conceal their
identities, source IP addresses and physical locations.  *Id.* ¶¶ 31-32.

Plaintiff has continued to pursue discovery leads and received subpoena responses within

the last week, which coincided with the close of discovery on December 7, 2020. *Id.* ¶ 28; Dkt.

No. 31. Plaintiff has exhausted its ability to investigate Defendants' true identities using U.S.

civil discovery tools, despite its best efforts and the exercise of reasonable diligence to determine

Defendants' identities. *Id.* ¶¶ 29, 33. Although Defendants' true identities remain unknown,

Plaintiff's discovery efforts have confirmed a connection to Russia, and Plaintiff, at the time of

this Court's order, was assessing its options with respect to this information and potential

avenues for further investigation or relief in or with respect to that country. *Id.* ¶ 30.

**Service of Process on Defendants**

The Court authorized service by email and publication on July 22, 2020. Dkt. No. 13 at

pp. 7-8. On July 24, 2020, July 29, 2020 and August 3, 2020, Plaintiff served email addresses

associated with Defendants' Internet domains. Ramsey Decl. ¶¶ 12-22. Plaintiff also served

Defendants by publication on July 24, 2020 at the website http://www.dxclegalnotice.com/. *Id.*

¶¶ 7-11. Plaintiff used an email tracking service to monitor whether service emails were

received and read. *Id.* ¶ 22. The service of process emails were opened and viewed by

Defendants. *Id.*

The time for Defendants to answer or respond to the complaint expired 21 days after

service of the complaint and summons—on August 14, 2020 (21 days after email service). *Id.* ¶

4. Defendants have not contacted DXC or counsel about this case. *Id.* ¶ 3. To the best of

Plaintiff's information and belief, no Defendant is a minor or incompetent person, or unable to

respond due to absence caused by military service. *Id.* ¶ 4.

**II.    LEGAL AUTHORITY**

"When a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

enter the party's default." Fed. R. Civ. P. 55(a).  Plaintiff has served the Complaint and all orders and pleadings on Defendants using the methods ordered by the Court under Rule 4(f)(3), including service by email and publication.  These methods of service satisfy Due Process and were reasonably calculated to notify the Defendants of this action, particularly given the nature of Defendants' conduct.  *See, e.g., FMAC Loan Receivables v. Dagra,* 228 F.R.D. 531, 534 (E.D. Va. 2005) (acknowledging that courts have readily used Rule 4(f)(3) to authorize international service through non-traditional means, including email); *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002) (involving Internet-based misconduct; "[Defendant] had neither an office nor a door; it had only a computer terminal.  If any method of communication is reasonably calculated to provide [Defendant] with notice, surely it is email…");[1] *BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271-273 (E.D. Va. 2005) (approving notice by publication in two Pakistani newspapers circulated in the defendant's last-known location); *Microsoft Corp. v. John Does 1-27,* Case No. 1:10-cv-156 (E.D. Va. 2010) at Dkt. No. 38, p. 4 (authorizing service by email and publication in similar action) (Brinkema, J.); *Sophos Ltd. et al. v. John Does 1-2,* Case No. 1:20-cv-502 (E.D. Va. 2020) at Dkt. No. 15 (same) (O'Grady, J.).

As explained above, Plaintiff successfully sent numerous service emails to the email addresses associated with Defendants and their domains used to carry out cybercrime attack against Plaintiff.  Ramsey Decl. ¶¶ 12-22.  Given that Defendants' preferred mode of communication regarding the domains was via electronic means, given the direct association between the email addresses and the domains, and given that all orders and pleadings were

---

[1]  *Rio Properties* has been followed in the Fourth Circuit.  *See FMAC Loan Receivables*, 228 F.R.D. at 534 (E.D. Va. 2005) (following *Rio*); *BP Prods. N. Am, Inc.*, 232 F.R.D. at 264 (E.D. Va. 2005) (same); *Williams v. Adver. Sex L.L.C.*, 231 F.R.D. 483, 486 (N.D. W. Va. 2005) ("The Fourth Circuit Court of Appeals has not addressed this issue. Therefore, in the absence of any controlling authority in this circuit, the Court adopts the reasoning of the Ninth Circuit in *Rio Properties, Inc.* ....").

successfully sent to scores of such addresses, it is appropriate to find that all orders and pleadings were served on Defendants pursuant to this Court's order.  *Id*.  While Defendants' specific physical addresses are unknown, the evidence indicates that Defendants carry out business through the email addresses.  *Id*. ¶¶ 12-15.  Moreover, it is likely that Defendants are aware of the notice website, which has been publicly available since July 24, 2020 and was included in the emails to the Defendants.  *Id*. ¶¶ 7-11.  Defendants are undoubtedly aware that they have lost control of much of their harmful infrastructure, pursuant to the Court's injunctions, and any cursory investigation would reveal that Plaintiff has initiated this lawsuit.  *Id*. ¶¶ 5-6.

Therefore, pursuant to Fed. R. Civ. P. 55(a), entry of default against the non-responsive Defendants is appropriate here.  *See 3M Co. v. Christian Invs. LLC*, 2012 U.S. Dist. LEXIS 64104, *4 (E.D. Va. 2012) (default entered against non-responsive international defendant served pursuant to Rule 4(f)).

## III.    CONCLUSION

For all of the foregoing reasons, entry of default against the John Doe Defendants 1-2 is appropriate.  Plaintiff respectfully requests entry of default pursuant to Rule 55(a) so that Plaintiff can proceed with a motion for default judgment and permanent injunction.

Dated: December 17, 2020                    Respectfully submitted,

_____

Julia Milewski (VA Bar No. 82426)
Matthew Welling (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington DC 20004-2595
Telephone:  (202) 624-2500
Fax:            (202) 628-5116
jmilewski@crowell.com
mwelling@crowell.com

Gabriel M. Ramsey (*pro hac vice*)
Kayvan M. Ghaffari (*pro hac vice*)
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone:  (415) 986-2800
Fax:            (415) 986-2827
gramsey@crowell.com
kghaffari@crowell.com

*Attorneys for Plaintiff DXC Technology Company*